IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MELINDA CARLTON,                        Civ No. 03-6202-AA

    Plaintiff,                     OPINION AND ORDER

  vs.

MARION COUNTY, a municipal
corporation, MICHAEL RYAN,
individually, and DOES 1-10,

    Defendants.

---

Donna G. Goldian
Paul R.J. Connolly
Connolly & Goldian, LLP
2731 Twelfth Street, S.E.
P.O. Box 3095
Salem, Oregon 97302
    Attorney for plaintiff

Jeffrey D. Austin
Tamara E. Russell
Miller Nash LLP
111 S.W. Fifth Avenue
3400 U.S. Bancorp Tower
Portland, Oregon 97204-3699
    Attorneys for defendant

AIKEN, Judge:

Plaintiff Melinda Carlton filed this action against defendants Marion County and Marion County Commissioner Michael Ryan, alleging constitutional rights violations under 42 U.S.C. § 1983, gender discrimination under 42 U.S.C. § 2000 *et seq.* and Or. Rev. Stat. § 659A.030, whistleblower retaliation under Or. Rev. Stat. § 659A.203, and wrongful discharge. In an Opinion and Order dated February 19, 2004, the court dismissed plaintiff's § 1983 and wrongful discharge claims against all defendants and plaintiff's gender discrimination claims against defendant Ryan. Defendants now move for summary judgment on plaintiff's claim for whistleblower retaliation. Defendants' motion is granted.

## I. FACTUAL BACKGROUND

The Marion County Board of County Commissioners (the Board) is comprised of three members, and a majority vote of the Board is necessary to transact business or make other Board decisions. In October 2000, plaintiff was hired as the County Administrator upon the unanimous vote of Board members Michael Ryan, Randall Franke, and Patricia Milne.

During her tenure as County Administrator, plaintiff disagreed with Commissioner Ryan's actions involving the Mid-Willamette Valley Data Center, the sale of Marion County property known as the Franklin Building, and the appropriation of funds for Life Directions, a nonprofit organization.

2        - OPINION AND ORDER

The Mid-Willamette Valley Data Center is an entity created and funded by both the City of Salem and Marion County to serve as a joint information technology department. The Data Center is governed by a detailed intergovernmental agreement between the City and the County, and the Data Center Board is composed of two City officials, two County officials, and one citizen member jointly selected by the City and the County. During plaintiff's employment, Commissioner Ryan was one of the two County officials who sat on the Data Center Board.

Each year, the Data Center Board presented its proposed budget to the City and the County for approval. Upon approval of the budget, the City and County each allocated their respective shares of the budget to the Data Center. The County was able to monitor the funds it appropriated through the budget process, because it could allocate more or less money as desired. Once the funds were appropriated to the Data Center, however, it needed no approval from either the City or the County before expenditure of the funds.

In December 2000, plaintiff learned that an audit of the Data Center showed an "ending fund balance" of about $660,000, and that a majority of the Data Center Board - chaired by defendant Ryan - had voted to expend approximately $160,000 of that balance without first notifying the County of the surplus funds. Plaintiff voiced her concern to the Board that the Data Center intended to spend the surplus fund balance without notifying the County or allowing the

County to have input on how the funds were spent. Plaintiff asked Marion County Counsel to draft a policy requiring the Data Center Board to consult with the City and County before spending any surplus funds.

At an administrator's meeting in May 2001, plaintiff again expressed her concerns regarding the Data Center budget surplus to Ryan, who stated that he did not want to discuss the subject further. Based on this statement, plaintiff felt that Ryan was directing her not to discuss the funds expenditure with others including the Board, the Budget Committee, or County staff. Ultimately, County counsel drafted a policy regarding Data Center funds to the Board, but it was not adopted.

The Franklin Building was real property owned by Marion County. When plaintiff was hired, the County was in the process of attempting to lease the building. The County hired a consultant, PGP, Inc. – Spencer Power, to perform an extensive analysis of the value, costs, and financial return of renovating and leasing the Franklin Building. The County also retained Coldwell Banker to serve as a leasing agent. Coldwell Banker suggested that the County would realize a greater profit if it sold the Franklin Building rather than if it renovated and leased the building.

Plaintiff encouraged the Board to complete a facilities study to assess the County's space needs before deciding to sell the Franklin Building. When Commissioners Ryan and Franke objected to

a facilities study, plaintiff urged the Board to hire an independent firm to analyze whether the sale would be in the County's best interests. Ryan and Franke again disagreed with plaintiff about the need to hire an outside firm to perform a second valuation of the building. The Board proceeded with the sale of the Franklin Building, which was ultimately recommended and approved by plaintiff and the County's Director of Business Services.

Prior to the closing of the sale, plaintiff objected to the Board's inclusion of the anticipated sale proceeds in the County's 2001-2002 budget, because plaintiff did not think the proceeds should be appropriated until they were received by the County. The Board was advised by County counsel that the Franklin Building sale proceeds must be included in the 2001-2002 budget under local budget law, and the Board subsequently voted to include proceeds from the sale of the Franklin Building in the 2001-2002 budget.

Life Directions is a Michigan non-profit organization. In October 2001, Ryan, in his capacity of the chair of the Marion County Public Safety Coordinating Council, applied for a grant to support a Life Directions project. On October 15, 2001, the Marion County Children and Families Commission voted to grant the Public Safety Coordinating Council $5,000 for that purpose.

On or about May 8, 2001, plaintiff alleges that Ryan entered her office and confronted her after a contentious budget meeting.

5        - OPINION AND ORDER

When plaintiff attempted to leave, plaintiff maintains that Ryan grabbed her arm and she had to pull away from Ryan's grip. On or about the next day, plaintiff reported the incident to Marion County Counsel, the Director of Human Resources, and the Director of Administrative Services.

Later in May 2001, after an administrator's meeting, plaintiff alleges that Ryan called plaintiff into his office and told her that he would be a commissioner long after plaintiff was gone. Plaintiff understood Ryan's statement as a threat to terminate her employment if she continued to oppose Board decisions.

In June 2001, the Board began a month-long process to evaluate plaintiff's performance as County Administrator. The Board solicited comments from County department heads and held several meetings while conducting a formal evaluation of plaintiff's job performance. On July 10, 2001, Commissioners Ryan and Franke voted to terminate plaintiff's employment, effective August 10, 2001, citing plaintiff's lack of communication with the Board and various other performance deficiencies. Commissioner Milne voted to retain plaintiff as County Administrator.

Plaintiff believed the reasons for her termination were pretextual, and that she was terminated, in part, to retaliate against her for speaking out against fiscal mismanagement, waste of funds, and abuse of authority.

On July 18 and November 7, 2001, plaintiff provided tort claim

notices to the County pursuant to Or. Rev. Stat. §§ 30.260-30.300. On or about May 9, 2002, plaintiff filed a Complaint with the Oregon Bureau of Labor and Industries (BOLI) and with the Equal Employment Opportunities Commission. On or about May 9, 2003, plaintiff received a "right to sue" letter from BOLI. On July 30, 2003, plaintiff filed this action.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

### III. DISCUSSION

Plaintiff alleges that the Board's termination of her employment violated Oregon's whistleblower protection statute, which renders it unlawful for a "public employer" to "[p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of . . . [m]ismanagement, gross waste of funds or abuse of authority . . . ." Or. Rev. Stat. § 659A.203(1)(b)(B). Plaintiff alleges that defendants retaliated against her because she disclosed conduct of the Board and Commissioner Ryan that plaintiff reasonably believed was mismanagement, waste of funds, and abuse of authority.

This District applies the Title VII retaliation framework to claims asserted under the Oregon whistleblower statute. See e.g., Lakeside-Scott v. Multnomah Co., 2004 WL 1068796, *9 (D. Or. May 11, 2004) (citing Ryan v. Patterson Dental Supply, Inc., 2000 WL 640859 (D. Or. May 12, 2000). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: "(1)

that she was engaging in a protected activity [i.e., made a protected disclosure], (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." Trent v. Valley Elec. Ass'n, Inc., 41 F.3d 524, 526 (9th Cir. 1994) (citing E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1513-14 (9th Cir.1989)). Additionally, a plaintiff must show that her complaints were the "likely reason" for the adverse employment action. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).

Defendants argue that Marion County is the only proper defendant with respect to this claim, because plaintiff presents no evidence that defendant Ryan was "motivated by other than an intention to serve" Marion County when he voted to terminate plaintiff's employment. Dryden v. SAIF Corp., 103 Or. App. 76, 81, 796 P.2d 397, 400 (1990); see also Or. Rev. Stat. § 30.265(1) (the public body shall be substituted as the only defendant when a tort claim is brought against public officials for actions taken within the scope of their employment). Conversely, the County argues that if the court finds sufficient evidence that Ryan acted solely for his own benefit in voting to terminate plaintiff, the County is not the proper defendant and must be dismissed from this action.

Regardless of whether Commissioner Ryan or Marion County is the proper defendant under this claim, I find that plaintiff fails to present evidence that she reasonably believed defendants actions

9      - OPINION AND ORDER

constituted mismanagement, a waste of funds, or abuse of authority to render her complaints protected "disclosures" under the Oregon whistleblower statute. Further, I find that plaintiff fails to present evidence that she suffered an adverse employment action as a result of her complaints about Commissioner Ryan, the Data Center Board, the sale of the Franklin Building, or appropriations to Life Directions.

First, plaintiff alleges that she complained of mismanagement and waste of funds with respect to Data Center Board's decision to spend surplus funds. Plaintiff maintains that Ryan, as chair of the Data Center Board, could have delayed the expenditure of surplus funds until the County determined whether to continue its contract with the Data Center. Plaintiff, however, fails to present evidence that Ryan actually possessed such authority or that a failure to exercise such authority was mismanagement, waste of funds, or an abuse of authority on the part of the County. The fact that defendant Ryan chaired the Data Center Board does not support a finding that his actions can be imputed to the Board, particularly when Ryan was one of five Board members and could not take unilateral action. Moreover, once the County approved the Data Center budget and allocated funds accordingly, the Data Center was not required to consult with either the City or the County before it expended the funds. Declaration of Michael Hansen, pp. 2-3. I do not find that plaintiff's policy recommendation rejected

by the Board can serve as a protected disclosure under the Oregon whistleblower statute. As County Administrator, plaintiff should have been familiar with the agreement governing the Data Center Board and known that adoption of such a policy would have no binding affect absent a modification to intergovernmental agreement between the County and the City. Thus, plaintiff could not have had a reasonable belief that Ryan's failure to postpone the Data Center Board's decision to expend funds until consultation with the County constituted mismanagement, waste of funds, or an abuse of authority.

In response to defendants' motion, plaintiff also argues that she voiced concern about the quality of services the County received from the Data Center, and whether those services were worth the amount of funding provided by the Board. Plaintiff alleges that defendant Ryan disagreed with her suggestions regarding allocation of Data Center funds, and that he rejected her suggestion to investigate financial irregularities and waste of funds with respect to the Data Center. Plaintiff, however, fails to establish how plaintiff's complaints establish a protected "disclosure" so as to support a whistleblower claim.

No Oregon case brought under the Oregon Whistleblower statute has defined the term "disclosure." See e.g., Young v. State, 182 Or.App. 210, 47 P.3d 926 (2002). However, the Oregon whistleblower statute is very similar to the federal Whistleblower Protection Act

11   - OPINION AND ORDER

(WPA), and I thus find federal cases construing WPA to be persuasive in determining what type of information constitutes a "disclosure." Generally, "disagreement between managers over a debatable matter of internal policy" is not considered a "disclosure." See Coons v. Sct'y of U.S. Dept. of Treasury, 383 F.3d 879, 890 (9th Cir. 2004).

Here, plaintiff alleges nothing more than policy disagreements over the County's funding and continued participation with the Data Center. In fact, deposition testimony reveals that Ryan, too, questioned the quality of services provided to the County by the Data Center. Affidavit of Donna Goldian, Ex. 10, p. 6 (Margaronis, pp. 33-35). Therefore, plaintiff did not "disclose" wrongdoing within the meaning of the Oregon whistleblower statute.

Second, plaintiff argues that the Board terminated her because she complained about the Board's approval of the sale of the Franklin Building and inclusion of the sale proceeds in the 2001-2002 budget. Again, however, plaintiff fails to show that she reasonably believed the Board's approval of the sale was mismanagement or a gross waste of funds. The Board had retained a consultant to perform a valuation of the building and had hired a leasing agent who informed the County that it would obtain a greater profit by selling the building. The sale was conducted pursuant in accordance with governing law, and no evidence suggests that the Board committed wrongdoing in connection with the sale, or

that it attempted to conceal any part of the sale process. Hansen Decl., p. 3. Plaintiff's disagreement with the Board's decision to sell the building is nothing more than a policy dispute that is not actionable under the whistleblower statute.

The same is true with respect to the Board's decision to include the anticipated sale proceeds in the County's 2001-2002 budget. County counsel advised the Board that the County was required to include the sale proceeds under local budget law, and a majority of the County's Budget Committee also voted to include the sale proceeds in the budget. Hansen Decl., pp. 3-4.[1] As emphasized by defendants, all of the Board's decisions were made in a public forum, with the documents supporting its decision subject to Oregon public records law. Therefore, plaintiff could not reasonably believe the Board's approval of the sale or related budget action constituted mismanagement or gross waste of funds.

Next, plaintiff contends that she raised concerns over Commissioner Ryan's relationship with and attempted funding of Life Directions. Specifically, plaintiff alleges that in January 2001 she questioned the use of County resources to raise funds for Life Directions, because she had been "informed" that Ryan had directed the County Health Department to fund a $10,000 grant to Life Directions. Apparently, Ryan is supportive of this organization,

---

[1] Plaintiff's statement that the Budget Committee took contrary action is not supported by the evidence cited. Plaintiff's Concise Statement of Material Facts, ¶ 11.

13      - OPINION AND ORDER

and plaintiff alleges that Ryan used his influence to direct the use of County funds outside regular channels.

However, the evidence presented by defendants reveals that Life Directions did not receive any County funds until after plaintiff was terminated. In October 2001, Ryan, as chair of the Marion County Public Safety Coordinating Council, applied for a <u>federal</u> grant to fund a Life Directions project. On October 15, 2001, the Marion County Children and Families Commission voted to grant $5,000 for the implementation of Life Directions. The Commission awards grants through the Strategic Investment Process, which requires a detailed application procedure. According to the Declaration of Dan Murphy, unrebutted by plaintiff, Ryan followed all of the required procedures and obtained the grant in the manner authorized. Therefore, plaintiff's allegations are factually incorrect. <u>See</u> Plaintiff's Concise Statement of Material Facts, ¶ 6; Affidavit of Donna Goldian, Ex. 12, pp. 79-81, 86-87.

During oral argument, plaintiff attempted to buttress this allegation and argued that she was informed by former County counsel that Ryan had previously attempted to use County resources to obtain a grant for Life Directions, and that she had told Ryan that he could not engage in such activities. Plaintiff fails to disclose the basis of her belief and cites no credible evidence to support it. Rather, plaintiff apparently accepted information from a third party without ascertaining its veracity. The whistleblower

statute, however, requires that plaintiff have a *reasonable* belief of wrongdoing; any belief that plaintiff had regarding the County's improper funding of Life Directions is unreasonable.

Regardless, plaintiff failed to include the Life Directions allegation in her BOLI complaint, and she is therefore precluded from raising it in this action. Under the relevant statute of limitations governing her claim, plaintiff was required to file her federal complaint within ninety days from her termination or from the date she received her "right to sue" letter from BOLI. See *former* Or. Rev. Stat. § 659.530, *amended by* OR Laws 2001 ch. 621 § 91(3) (unlawful practices occurring before the 2001 amendment will continue to be governed by the statute of limitations provided under Or. Rev. Stat. § 659.530 (1999)); Draper v. Astoria, 995 F. Supp. 1122, 1138 (D. Or. 1998).

Finally, plaintiff argues that she disclosed Ryan's "abuse of authority" and battery after he grabbed plaintiff's arm following a heated discussion. Abuse of authority is defined by Oregon Administrative Rules as to "deliberately exceed or make improper use of delegated or inherent authority or to employ it in an illegal manner." Or. Admin. R. 839-010-000. Defendants argue that Ryan's conduct does not fit this definition, because he did not exercise any authority - delegated, improper or otherwise - during the alleged incident.

I agree that Ryan's alleged conduct cannot be construed as an
15    - OPINION AND ORDER

abuse of authority.  Even plaintiff, in her deposition testimony, stated that she viewed Ryan's alleged conduct as an example of his "general animosity" toward her.  Declaration of Erin Truax in Support of Defendant's Reply, Ex. 2, p. 12 (Carlton Deposition, p. 142.).  While Ryan's conduct could arguably support another type of claim, it does not support a disclosure of an "abuse of authority" under the whistleblower statute.

Even if plaintiff's complaints could be construed as protected disclosures, she presents no evidence that they were the reason for her termination.  The Board sought voluntary comments from County department heads and utilized those comments in the Board's review of plaintiff's job performance.  Commissioner Franke, rather than Ryan, authored the memorandum that invited comments from County department heads regarding plaintiff's performance.  Truax Decl. in Support of Defendant's Motion for Summary Judgment, Ex. 1, pp. 142-44, 207-09.  Very few of the comments were favorable and most revealed serious criticisms of plaintiff's performance.  Id. Ex. 1, pp. 149-206.  Plaintiff presents no admissible deposition testimony, affidavit or declaration from any County employee that Ryan solicited or suggested that negative remarks be included in plaintiff's evaluation.[2]

---

[2]Nicola Cribb, a former advisor to Commissioner Milne who avers that that Milne told her that the County Assessor had told Milne that Ryan was "rallying the troops," and that the County Assessor told her that Ryan encouraged department heads to provide negative comments in plaintiff evaluation.  Id.  Cribbs'

Finally, plaintiff testified in her deposition that she had no idea whether her complaints regarding the Data Center Board or the Franklin Building were reasons for her termination. Truax Decl. in Support of Defendant's Motion, Ex. 2, p. 6 (Carlton Deposition, p. 69); Truax Decl. in Support of Defendant's Reply, Ex. 2, p. 10 (Carlton Deposition, p. 129). Plaintiff offers no evidence that Ryan persuaded Franke to vote in favor of terminating plaintiff's employment because of her complaints, or even that the two commissioners ever discussed the subject. In sum, plaintiff presents no evidence that the Board terminated her employment based on her complaints regarding the Data Center Board, the Franklin Building, Life Directions, or defendant Ryan's conduct.

## CONCLUSION

Defendants' Motion for Summary Judgment (doc. 47) is GRANTED. Plaintiff's claim for whistleblower retaliation in violation of Or. Rev. Stat. § 259A.203 is DISMISSED.

IT IS SO ORDERED.

Dated this  9  day of May, 2005.

                                        /s/ Ann Aiken
                                           Ann Aiken
                            United States District Judge

---

statements constitute double-hearsay and will not be considered. Moreover, the County Assessor testified in his deposition that he had no conversation with either Ryan or Franke about plaintiff's evaluation. Truax Decl. in Support of Defendant's Reply, Ex. 10, p. 3 (Ebner Deposition, p. 21).

17     - OPINION AND ORDER